## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL LUIS V.[1],

      Plaintiffs,

      v.

FRANK BISIGNANO,

      Defendant.

CIVIL ACTION NO. 3:23-CV-00910

(Magistrate Judge Latella)

## <u>MEMORANDUM</u>

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Angel Luis V.'s claims for a period of disability and disability insurance benefits ("DIB") under Title XVI of the Social Security Act. (Doc. 1). Both parties have consented to a Magistrate Judge conducting all proceedings in the case. (Doc. 7). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded.

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

1

## I.      Background and Procedural History

On May 23, 2019, Plaintiff Angel V. filed an application for Title XVI

benefits. (Doc. 10, p. 1). In this application, Angel V. claimed disability beginning

July 20, 2015. (R. 15). The Social Security Administration initially denied his

claim on August 26, 2019. (*Id.*). Angel V. filed a request for a hearing before an

Administrative Law Judge ("ALJ") on March 8, 2020. ALJ Michelle Wolfe

conducted the requested hearing on October 26, 2021.

In a written opinion dated January 26, 2022, the ALJ determined that Angel

V. is not disabled and therefore not entitled to the benefits sought. (R. 29). Angel V.

appealed the ALJ's decision to the Appeals Council, who, on April 10, 2023,

denied Angel V.'s request for review. (Doc. 10, p. 2). On June 3, 2023, Angel V.

filed the instant action. (Doc. 1). The Commissioner responded on August 7, 2023,

providing the requisite transcripts from the disability proceedings on the same day.

(Doc. 8). The parties then filed their respective briefs (Doc. 10; Doc. 11; Doc. 12),

with Angel V. alleging four errors warranting reversal or remand.

## II.     The ALJ's Decision

In a decision dated January 26, 2022, the ALJ determined that Angel V. "has

not been under a disability, as defined in the social security Act, since May 23,

2019, the date the application was filed." (R. 29). The ALJ reached this conclusion

after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.120(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined that Angel V. "has not engaged in [SGA] since May 23, 2019, the application date." (R. 17). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Angel V.:

has the following severe impairments: degenerative disc disease of the cervical spine, status-post a November 2018 anterior cervical discectomy and fusion at the C3-C4 level; degenerative disc disease of the lumbar spine; obesity; degenerative joint disease of the right shoulder; right shoulder impingement syndrome; calcific tendinitis of the right shoulder; obesity; depression; bipolar disorder; anxiety disorder; and obsessive-compulsive disorder (20 CFR 416.920(c)).

(R. 17).

The ALJ also identified Angel V.'s non-severe impairments as migraine headaches, syncopal episodes and seizures, gastrointestinal impairments including diverticulitis, astigmatism and neoplasm of choroid of the left eye, and dermatitis. (R. 17–19). Lastly, the ALJ listed some non-medically determinable impairments that Angel V. claimed, including temporal arteritis, obstructive sleep apnea, hip pan, and chest pain. (R. 19).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listen in 20 C.F.R. Subpt. P, App. 1 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Angel V.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. R. 19–20). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root); 1.16 (lumbar spinal stenosis resulting in

compromise of the cauda equina); 1.18 (abnormality of a major joint(s) in any

extremity); 3.03 (asthma); 12.04 (depressive, bipolar and related disorders); 12.06

(anxiety and obsessive-compulsive disorders); 12.08 (personality and impulse-

control disorders) and SSR 19-2p (the effects of the claimant's obesity). (R. 20).

Between steps three and four, the ALJ determines the claimant's residual

functional capacity ("RFC"), crafted upon consideration of the medical evidence

provided. The ALJ has determined that Angel V.:

> has the residual functional capacity to perform light work as defined in 20
> CFR 416.967(b) except he can frequently balance. He can frequently climb
> ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can
> occasionally stoop, crouch, crawl, kneel. He can occasionally push and/or pull
> with the upper extremities. He can occasionally reach overhead with his right
> upper extremity. He can frequently handle and finger for fine and gross
> manipulation. He is limited to frequent exposure to temperature extremes of
> cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation,
> and hazards, including dangerous moving machinery and unprotected heights.
> He can do simple, routine tasks, along with occasional detailed tasks, but no
> complex tasks. He requires a low-stress environment, defined as occasional
> decision-making and occasional changes in the work setting. He can
> frequently interact with supervisors. He can occasionally interact with
> coworkers, but no team type setting work. He cannot interact with the public.

(R. 22).

Having assessed a claimant's RFC, at step four the ALJ must determine

whether the claimant has the RFC to perform the requirements of their past

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still

perform past relevant work requires a determination that the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the

claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined that Angel V. "has not performed a position within the past fifteen years for earnings at a level that constitutes [SGA]" and that he therefore has no past relevant work. (R. 28).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Angel V. was 49 years old on the alleged onset date, defined as a younger individual age 18–49 by the Regulations. The ALJ also noted that Angel V. "has at least a high school education." (R. 28). While not discussed in the written opinion, Angel V. requested and relied upon a Spanish interpreter throughout the hearing. (R. 41– 42; R. 815 ("Preferred language is Spanish")).

The ALJ determined that upon consideration of these factors, Angel V.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 28). The ALJ specifically identified occupations of Production Laborer, Production Helper, and Sorter. (R. 29). As a result of this analysis, the ALJ determined that Angel V. was not disabled and denied his application for benefits. (*Id.*).

### III.    Standard of Review

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must

determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008);

*Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Angel V. is disabled, but whether the Commissioner's finding that Angel V. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been

held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.  Discussion

The Plaintiff presents four errors for this Court's review. First, the Plaintiff argues that the ALJ's function-by-function assessment was inadequate because a sitting, standing, and walking limitation was not explicitly included in the RFC. Second, Plaintiff asserts that the RFC is not supported by substantial evidence because it exceeded the limitations of the medical opinions in the record. Third, Plaintiff argues that the ALJ substituted her opinion for a medical one when she found Dr. Mon's opinion to be unpersuasive. And fourth, Plaintiff asserts that the ALJ did not properly account for Angel V.'s moderate limitations in concentration, persistence, and pace when determining his RFC. For reasons that will be discussed below, while the ALJ did not err with respect to Plaintiff's first three arguments, Angel V.'s limitations in concentration, persistence, and pace were not thoroughly developed, and the case will therefore be remanded.

### A. The ALJ Adequately Assessed Plaintiff's Sitting, Standing, and Walking Limitations

Plaintiff argues that "each [medical opinion] agrees that there would be at least *some* limitations in the ability to sit, stand, and walk," and because the ALJ did not include any sitting, standing, or walking limitations within the RFC assessment, she "failed to conduct the requisite function-by-function assessment required by SSR 96-8p." (Doc. 10, p. 7). As support for this argument, Plaintiff relies heavily on *Barbour v. Kijakazi*, No. 4:20-CV-0861, 2021 WL 4478332 (M.D. Pa. Sept. 30, 2021). In that case, the ALJ established an RFC to perform light work with certain limitations. Notably, a standing and/or walking limitation was *not* included, despite the fact that ALJ accorded "some" and "significant" weight to two medical opinions that each included such a limitation. *Barbour*, 2021 WL 4478332, at *5. The Court noted that while "[a]n ALJ's failure to conduct a function-by-function assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence," in Barbour's situation, "the inadequacies in the ALJ's function-by-function assessment, and evaluation of the medical opinion evidence, frustrate meaningful judicial review." *Id.* at *5. These inadequacies, including the ALJ's failure to conduct the requisite assessment of standing and walking, leads to a question "as to whether the inability to stand for a full six hours, or the inability to walk for a full six hours, is vocationally significant to the performance of light work." *Id.* at *6.

11

Defendant responded to Plaintiff's argument by citing to case law stating that ALJs are not required to make itemized written findings for each listed work function, despite SSR 96-8p's discussion of a function-by-function analysis. (Doc. 11, pp. 10–12) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. 2000)). The Defendant argues that an RFC determination calls for the ALJ to discuss how the evidence supports the determination and to clear up any inconsistences, (Doc. 11, p. 12), and that the ALJ has adequately performed her duties in that regard.

The issue here is whether the ALJ adequately analyzed the medical opinions in the record and whether those opinions were given sufficient discussion in the RFC determination. In consideration of the deferential standard of review, this Court finds that substantial evidence did support the ALJ's decision.

There are three medical opinions discussed regarding Angel V.'s physical limitations: those of Dr. Bonita, Dr. Tedesco, and Dr. Mon. Each of these providers gave some type of limitation with regards to sitting, standing, and walking: Dr. Bonita opined that Angel V. could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday (R. 93); Dr. Tedesco opined the same (R. 108); and Dr. Mon opined that he could sit for a total of four hours in an eight-hour workday, stand for a total of four hours in an

eight-hour workday, and walk for a total of two hours in an eight-hour workday. (R. 2026).

The ALJ found the opinions of Drs. Bonita and Tedesco to be "somewhat persuasive" and Dr. Mon's opinion to be unpersuasive because it was "inconsistent with the imaging studies and examination notes throughout the record." (R. 26). The ALJ specifically referenced Dr. Mon's sitting and walking limitation, noting that despite this limitation, Angel V. "generally displays normal mobility during medical examinations." (*Id.*). The ALJ therefore adequately explained her reasoning behind rejecting Dr. Mon's opinion.

The ALJ ultimately found that Angel V. was able to perform a limited range of light work; however, the fact that she did not specifically conduct a function-by-function assessment of Angel V.'s ability to sit, stand, and walk is not fatal to the analysis. Light work, by definition, "requires a good deal of walking or standing" "for a total of approximately 6 hours of an 8-hour workday." SSR-83-10, 1983 WL 31251. Therefore, an ALJ's decision affirming a claimant's limitation to light work "where the claimant was limited to standing or walking for six hours in an eight-hour workday" will be upheld. *Marrero v. Bisignano*, No. 1:24-CV-1772, 2025 WL 2415753, at *6 (M.D. Pa. Aug. 20, 2025) (citing *Massey v. King*, No. 23-2135, 2025 WL 461553, at *1 n.2 (W.D. Pa. Feb. 11, 2025)). The argument that an RFC limitation to light work warrants remand if it fails to define sitting, standing, and

walking limitations was considered by the Third Circuit and rejected. *See Navas v. Comm'r of Soc. Sec.*, 289 F. App'x 55, 558 (3d Cir. 2008). A light work limitation "implicitly addresses these functions," and therefore, a limitation of standing and/or walking for six hours out of an eight-hour workday is "fully compatible and 'implicitly addressed' in a light work RFC." *Bayarinas v. Bisignano*, No. 4:24-CV-1216, 2025 WL 2550865, at *11 (M.D. Pa. Sept. 3, 2025).

As noted in *Barbour*, omitting a function-by-function assessment does not immediately mandate remand—only when no other substantial evidence supports the ALJ's decision. *Barbour*, 2021 WL 4478332, at *5. Because the ALJ adequately explained why she did not find Dr. Mon's opinion persuasive and did find Drs. Bonita and Tedesco's opinions with the six-hour standing/walking limitation to be somewhat persuasive and consistent with the record, no inconsistency exists and the ALJ's RFC finding is supported by substantial evidence in the record.

## B. The RFC Did Not Exceed the Limitations of the Medical Opinions of Record

Plaintiff begins by reframing his first argument—that it was error for the ALJ to reject all three medical opinions containing sitting, standing, and walking limitations, which, he asserts, resulted in an RFC that exceeded all medical opinions in the record. Plaintiff succinctly states the crux of the argument as follows:

14

The only medical opinions of record supports [sic] limitations in the ability to sit, stand, and walk. The residual functional capacity assessment contains no such limitations. Thus, all medical opinions of record are more restrictive than the ALJ's residual functional capacity assessment and there is no medical opinion of record which supports the ALJ's residual functional capacity assessment. Plaintiff and the Court are left to conclude that the ALJ substituted [her] opinion for that of a medical one and relied upon lay reinterpretation of the evidence to supplant the only medical opinion of record.

The ALJ is required to provide "a clear and satisfactory explication of the basis" of the weight he accorded to each opinion." *Cotter v. Harris*, 642 F.2d 700, 70r [sic] (3d Cir 1981). It cannot be said that the ALJ's explanation is clear or satisfactory when he has failed to explain how [Angel V.] is capable of sitting, standing, and walking without limitation when the only medical opinions of record support that [h]e cannot."

(Doc. 10, pp. 15–16). Defendant responds by asserting that Plaintiff's argument "is premised on his earlier argument that the ALJ did not assess sitting, standing, or walking limitations," although, as discussed *supra*, this limitation is inherently included in the definition of light work. The Defendant is correct. Although the ALJ did not specifically address the sitting and standing limitation, that limitation was included through the restriction to light work. Because the ALJ's RFC therefore included a sitting, standing, and walking limitation, the decision did not "ostensibly reject[] all medical opinions of record." (Doc. 10, p. 12).

### C. The ALJ Did Not Substitute Her Opinion for That of a Medical One by Rejecting Dr. Mon's Opinion

Plaintiff's third argument relates to the ALJ's finding that Dr. Mon's opinion was "unpersuasive," but that the state agency consultants' opinions were "somewhat persuasive." (R. 26). Plaintiff disagrees with the ALJ's finding that Dr.

Mon's opinion lacked persuasiveness, while also taking issue with the fact that the state agency physicians did not review a full record. ("As State agency consultants, neither Dr. Bonita nor Dr. Tedesco had the opportunity to review and consider the entire medical record before forming their opinions." (R. 26)). Plaintiff also argues that because "the reports of non-examining sources are generally given less weight than those of examining and treating sources," the fact that the opinions supporting the RFC were "non-examining state agency consulting physicians who did not review a complete record" was error requiring remand. (Doc 10, p. 20). Neither of these arguments are persuasive.

The fact that the ALJ relied heavily on the opinion of a non-treating physician is not an error requiring remand. As the Defendant describes, Plaintiff relies heavily on case law analyzing social security claims that were filed prior to March 2017. This is relevant due to the rescission of SSR 96-6p and its subsequent replacement with SSR 17-2p. Prior to the 2017 change, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Bayarinas*, 2025 WL 2550865, at *8. The closer the treating source was to the claimant, the more weight their opinion was entitled to. *Prebish v. Berryhill*, No. 3:18-CV-710, 2019 WL 2719970, at *5 (M.D. Pa. June 10, 2019), *report and*

*recommendation adopted,* No. 3:18CV710, 2019 WL 2745834 (M.D. Pa. June 28, 2019).

This changed in 2017, when "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Bayarinas*, 2025 WL 2550865, at *8. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the

"supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §
404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and
"consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).
Generally, the ALJ may, but is not required to, explain his or her consideration of
the other factors. However, if there are two equally persuasive medical opinions
about the same issue that differ, then the ALJ must explain how he or she
considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial
review, the ALJ's decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests" and the ALJ must indicate which
evidence was accepted, which evidence was rejected, and the reasons for rejecting
certain evidence. *Cotter*, 642 F.2d at 704, 706–07. An ALJ need not undertake an
exhaustive discussion of all the evidence or "use particular language or adhere to a
particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505
(3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ
discuss in his opinion every tidbit of evidence included in the record."). However,
an ALJ must ensure "sufficient development of the record and explanation of
findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v.
Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement
is that reading the ALJ's decision as a whole, there must be sufficient development

of the record and explanation of findings."). In sum, after the revisions, so long as "the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight." *Bayarinas*, 2025 WL 2550865, at *9.

Because Angel V. filed his claim on May 23, 2019, Plaintiff's argument that the ALJ was required to give more weight to Dr. Mon's opinion is an outdated argument. The ALJ adequately explained why she found Dr. Mon's opinion less persuasive than that of Drs. Bonita and Tedesco, and her written decision provides sufficient discussion as to how she arrived at determination.

Plaintiff also mentions the fact that the state agency consulting physicians did not review a complete record, and subsequent records "indicate that the claimant experiences slightly greater postural, environmental, and manipulative limitations than opined by either State agency physical health consultant." (R. 26). However, the fact that additional medical records came in which the agency consulting physicians were not able to review is not fatal.

The Third Circuit has held that an ALJ was entitled to rely on a state agency medical consultant despite the fact that the consultant's review only included records up to a year prior to the hearing. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). As grounds, the court found compelling that the consulting physician was able to review records from the time period around the claimant's

disability onset date, as well as the fact that "there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.* Given that the ALJ makes the ultimate determination, he or she is entitled to consider opinions of both treating physicians and the state agent. *Id.* "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity. State agent opinions merit significant consideration as well." *Id.* (internal quotation and citation removed).

This reasoning is compelling in Angel V.'s case. The ALJ "did not merely rubber stamp" the opinions of Drs. Bonita and Tedesco. *Id.* The ALJ did consider the more recent notes from Angel V.'s treating physician, which ultimately influenced the postural, environmental, and manipulative limitations that she imposed. (R. 26). Therefore, finding Drs. Bonita and Tedesco's opinions to be more persuasive than that of Dr. Mon did not result in the ALJ substituting her opinion for that of a medical one.

### D. The ALJ Failed to Account for Angel V.'s Moderate Limitation in Concentration, Persisting, or Maintaining Pace in the RFC

The parties disagree as to whether the ALJ met her burden of articulation by providing an adequate explanation for limiting Angel V. to "simple tasks." Plaintiff argues that despite the finding of moderate difficulties regarding concentration, persisting, or maintaining pace, the ALJ did not include any limitations regarding Angel V.'s inability to stay on task in the RFC. Because the error alleged by the

Plaintiff only concerns the concentration, persisting, or maintaining pace limitation, that will be the focus of this memorandum. Defendant responds by arguing that the ALJ did what she was required to do, namely, explain "why the evidence warranted a limitation to simple and routine work with limited changes, limited decision making, and limited social interactions, but not greater limitations." (Doc. 11, p. 26).

Both parties cite to *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), which found that the ALJ in that case failed to convey all of the claimant's mental deficiencies surrounding concentration, persistence or pace in his hypothetical questions to the VE; therefore, the ALJ's decision denying the claimant social security benefits was not supported by substantial evidence. *Id.* at 546. The Third Circuit further explained this in *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198 (3d Cir. 2019). In that case, the appellate court found that the ALJ had appropriately limited the claimant to simple tasks, despite her finding that he had moderate difficulties in concentration, persistence, and pace. The issue is not that a moderate difficulty in concentration, persistence, and pace is inherently incompatible with a limitation to simple tasks—instead, "as long as the ALJ offers a 'valid explanation,' a simple tasks' limitation is permitted." *Hess*, 931 F.3d at 211.

An explanation is required to explain why the claimant's difficulties do not prohibit him or her from performing simple tasks: "Without such an explanation, a

'simple tasks' limitation 'does not warrant a conclusion about whether a claimant's difficulties in concentration, persistence, or pace are so serious that he cannot satisfy the functional requirements of simple tasks" since the limitation alone "does not account for the extent of a claimant's difficulties." *Moeller v. Kijakazi*, No. 1:20-CV-00571, 2021 WL 3207247, at *7 (M.D. Pa. July 29, 2021) (internal quotation and citation omitted). While the holding in *Ramirez* found that the ALJ failed to explain why a claimant with deficiencies in concentration, persistence, or pace could perform a job consisting of simple tasks, the Court clarified that "[o]f course, there may be a valid explanation for this omission from the ALJ's hypothetical." *Ramirez*, 372 F.3d at 555. The requirement that an explanation is required to justify a simple tasks limitation therefore flows logically from the reasoning in *Ramirez*.

The issue then becomes whether the ALJ conducted the required analysis by providing a valid explanation in their written decision, which is inherently a fact-specific inquiry. The *Hess* case, discussed in more detail *infra*, is instructive on the type of analysis that is necessary for the ALJ to go through in order to limit a claimant to simple tasks despite their deficiencies in concentration, persistence, or pace. In *Hess*, the ALJ went through the claimant's self-reported activities of daily living, which included doing laundry, shopping, working and paying bills, and found that this was "consistent with an individual who is able to perform simple,

routine tasks." *Hess*, 931 F.3d at 204. The ALJ also went through the claimant's mental status examinations and reports. For example, in an October 2013 report, the ALJ described how Hess was able to maintain personal hygiene, keep a good attitude with a goal-directed thought process, and practice impulse control. The ALJ recapped similar findings from the February 2014 and August 2015 reports. One outlier from a March 2015 report hinted at an inability to work, as well as a depressed mood with poor insight; however, the ALJ explained why she found that this particular examination was inconsistent with the record. *Id.* at 205. By going through the ALJ's analysis, the Third Circuit demonstrates the numerous ways in which this ALJ examined and explained the record.

Ultimately, the appellate court found that the ALJ had provided a valid explanation in her written decision: "As indicated by our detailed description of her opinion, the ALJ explained at length and with sound reasoning why Hess's 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that Hess was incapable of performing 'simple tasks.'" *Id.* at 213. The ALJ was able to highlight "in her meticulous analysis of the record" medical opinions showing that the claimant was able to function effectively, opinion evidence showing that the claimant was capable of doing simple work, and the claimant's own description of his daily activities which included "a diverse array of 'simple tasks.'" *Id.* at 214.

This demonstration of what an in-depth analysis looks like may be contrasted with the case that Plaintiff cites heavily to, *Moeller v. Kijakazi*, No. 1:20-CV-00571, 2021 WL 3207247 (M.D. Pa. July 29, 2021). Factually similar to *Hess*, the ALJ there had limited Moeller to performing simple tasks while also finding that she had moderate limitations regarding concentrating, persisting, or maintaining pace. 2021 WL 3207247, at *3. However, "the ALJ's terse analysis" did not provide the requisite valid explanation of the ALJ's reasoning, and the decision was therefore vacated and the case remanded. *Id.* at *6. Specifically, the court held that "[d]espite limiting Ms. Moeller to simple routine tasks, the ALJ did not elaborate on why Ms. Moeller can perform such [simple] tasks even though the ALJ found her to be more limited than the opinion of [the state-agency consulting psychologist]." *Id.* The ALJ failed to "link Ms. Moeller's daily activities to her ability to perform simple tasks" or "make a connection between Ms. Moeller's mental examinations and her capability of engaging in simple tasks." *Id.* at *8. Instead, the ALJ included a conclusory statement that he considered the record as a whole, and that he found Moeller was able to perform the work as laid out in his RFC. Judge Schwab found this analysis to be insufficient.

Therefore, the issue at hand is whether ALJ Wolfe adequately explained why Angel V.'s difficulties with concentrating, persistence, and pace are not so significant that they prevent him from performing simple tasks. This Court finds

that her otherwise thorough analysis failed to properly close the gap between Angel

V.'s purported ability to perform simple tasks and his noted mental limitations.

> The relevant mental limitations as laid out in his RFC are as follows:

> He can do simple, routine tasks, along with occasional detailed tasks, but no complex tasks. He requires a low-stress environment, defined as occasional decision-making and occasional changes in the work setting. He can frequently interact with supervisors. He can occasionally interact with co-workers, but no team type setting work. He cannot interact with the public.

(R. 22). The ALJ then discussed his mental impairments as described by the

examiners, noting that Angel V. demonstrated an anxious and depressed mood and

affect. (R. 25). However, the ALJ also noted that "these findings are not consistent

throughout the record. He generally presents to medical examinations without any

observable evidence of anxiety, depression, or agitation." (*Id.*). She described how

the mental health provider found that Angel V.'s speech was clear, his thought

process was logical, his memory and attention span were normal, as was his insight

and judgment." (*Id.*). Proper medication seemed to help, although she noted that

the claimant was not always fully compliant, inferring from this that his

impairments were not as severe as he alleged.

> The ALJ then proceeded to analyze the medical opinions. She found Dr.

Roberts' opinion to be somewhat persuasive. Dr. Roberts had opined that Angel V.

had the ability to follow simple instructions and make simple decisions; however,

the record also indicated to the ALJ that he had the ability to understand and carry out some detailed instructions. (R. 27).

The ALJ found Dr. Murphy's to be the most persuasive, deeming it "generally persuasive." Dr. Roberts opined that Angel V. has "the ability to understand, remember, and complete instructions that are non-complex." (R. 27). However, in the examination notes, Dr. Murphy also notes that he has "sustained concentration and persistence limitations." (R. 112). His "ability to maintain attention and concentration for extended periods" and "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" are both moderately limited. (*Id.*). In what seems to tie into his ability to concentrate, Angel V.'s "ability to work in coordination with or in proximity to others without being distracted by them" is also moderately limited. (*Id.*). Despite this, Dr. Murphy ultimately opined he was "capable of engaging in simple or detailed tasks on a regular basis in spite of limitations," (*id.*), and, "[claimant] is capable of engaging in simple repetitive activities on a sustained basis in spite of his limitations." (R. 113).

Lastly, the ALJ considered Dr. Berger's opinion, which she found to be unpersuasive because "it is inconsistent with his own examination notes." (R. 27). He opined that claimant had "marked" limitations in several areas relating to workplace etiquette, including completing a workday, interacting with others,

taking adequate workplace precautions, tolerating stress and workplace changes, and goalsetting. Despite this opinion, Dr. Berger's treatment notes mark that Angel V.'s speech is clear, his thought process is coherent and logical, his concentration and attention span are normal, and his judgment is intact. (R. 27–28). While the ALJ did consider these opinions, Angel V.'s self-reported or otherwise described daily activities were *not* considered.

Ultimately, the ALJ did not provide a valid explanation for limiting Angel V. to simple work after finding Dr. Murphy's opinion to be generally persuasive and that he has a moderate limitation in concentration, persistence, or pace. As Judge Schwab explained in *Moeller*, the ALJ here "fails to elaborate on *why* [the claimant] can execute simple tasks despite [his] moderate difficulty in concentration, persistence, or pace." *Moeller*, 2021 WL 3207247, at *8. There was no explanation as to Angel V.'s daily activities, or any other examples, which could have been relied upon to demonstrate that he can perform simple tasks. Despite finding that Angel V.'s speech was clear and his thinking was normal, that does not resolve the discrepancy between his moderate limitation regarding concentration, persistence, and maintaining pace and his ability to perform simple tasks. "Without such an explanation, the ALJ does not sufficiently account for the extent of [Angel V.'s] difficulties, and thus, the limitations imposed are not supported by substantial evidence." *Id.*

## V.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration. An appropriate order follows.


Dated: October 3, 2025                              **/s/ Leo A. Latella**
                                                    Leo A. Latella
                                                    United States Magistrate Judge